**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OMAR EWIDEH and NIVERTITI GEAITH, | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| v. | : | |
| | : | |
| HOMESITE INSURANCE CO. OF THE MIDWEST *et al.*, | : | |
| *Defendants* | : | No. 23-2590 |

### M E M O R A N D U M

PRATTER, J.                                                                                    FEBRUARY 6, 2024

York, Pennsylvania is one of the many cities within this Commonwealth replete with history. York was the birthplace of the Articles of Confederation, served as the colonies' central government when the Continental Congress moved the capital from Philadelphia under the threat of the British advancing, and where Congress declared the first National Day of Thanksgiving.[1] Today, York is home to Harley-Davidson's Vehicle Operations, which span more than 230 acres where visitors can learn how Hogs are made.[2] Those living in or visiting York can frequent a performing arts center, 24 parks, a symphony orchestra, and two farmers' markets. *Id.* And, of course, the iconic York Peppermint Patty was born in York, Pennsylvania in 1940.[3]

---

[1]      *History*, City of York, https://www.yorkcity.org/about/history/ (last accessed Feb. 2, 2024).
[2]      *York*, Visit Pennsylvania, https://www.visitpa.com/region/dutch-country-roads/york (last accessed Feb. 2, 2024).
[3]      *The Cool History of YORK Peppermint Patties*, Hersheyland, https://www.hersheyland.com/brands/york/about.html#:~:text=In%201920%2C%20Henry%20Kessler%20opened,Patties%20came%20into%20the%20picture.&text=The%20York%20Cone%20Company%20merged,with%20dark%20chocolate%20and%20peppermint (last accessed Feb. 2, 2024).

York also falls within the boundaries of the Middle District of Pennsylvania.[4] It is also where Omar Ewideh and Nivertiti Geaith, the *pro se* plaintiffs in this case, reside and where they suffered losses to their residence. The Middle District is also where Mr. Ewideh and Ms. Geaith are involved in two other lawsuits, one of which concerns largely the same parties and claims at issue in this case. Multiple defendants here have filed motions to dismiss, or, in the alternative, motions to transfer venue pursuant to 28 U.S.C. § 1404(a) to the Middle District of Pennsylvania to be consolidated with the other actions concerning Mr. Ewideh and Ms. Geaith. Like when the Continental Congress moved the nation's capital from Philadelphia to York, this case before the Eastern District of Pennsylvania will be transferred to the Middle District of Pennsylvania.

## BACKGROUND

The facts in this case are relatively straightforward. Mr. Ewideh and Ms. Geaith allege that they suffered casualty losses at their property on April 5, 2022, and during the fall of 2022 from wind damage. The plaintiffs allege that their insurer, Homesite, and its attorneys did not properly handle the losses and that the defendants violated their "duty to defend." The plaintiffs sued Homesite, its attorneys James J. Walsh and Suzanne R. Fisher, and other parties handling the insurance claim process for breach of contract, violation of the Fair Housing Act, bad faith, tortious interference, civil conspiracy, civil racketeering, libel, and slander.

This is not the only lawsuit involving these parties. Mr. Ewideh and Ms. Geaith filed a lawsuit against many of the same defendants in the Middle District of Pennsylvania prior to filing their case before this Court. *Ewideh et al. v. Homesite Ins. Co. of the Midwest et al*, No. 23-cv-00812 (M.D. Pa. 2023) ["Middle District Action"]. Homesite filed its own suit against Mr. Ewideh

---

[4] *About the District*, U.S. Att'y's Off. M.D. Pa., https://www.justice.gov/usao-mdpa/about-district#:~:text=The%20Middle%20District%20of%20Pennsylvania,Maryland%20border%20in%20the%20south (last accessed Feb. 1, 2024).

and Ms. Geaith seeking a declaratory judgment. *Homesite Ins. Co. of the Midwest v. Ewideh et al.*, No. 1:22-cv-1664 (M.D. Pa. 2022).

Pending before the Court are motions to dismiss from all defendants. Each of these motions seek, in the alternative, for the Court to transfer the case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Plaintiffs did not file any opposition to the motions.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Once it has been established that another forum would be proper, the defendant bears the burden of showing, on the balance of public and private factors, the considerations weigh strongly in favor of transfer." *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 711 (E.D. Pa. 2022) (quoting *Aamco Transmission, Inc. v. Johnson*, 641 F. Supp. 2d 464, 466 (E.D. Pa. 2009)).

The Court considers public and private interest factors "which stretch beyond those enumerated in § 1404(a)" when determining a motion to transfer. *Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 498 (E.D. Pa. 2022) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). These private interest factors are:

> [1] [P]laintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (quoting *Jumara*, 55 F.3d at 879) (alteration in original). Public interest factors are:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive [judicial economy]; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the

local interest in deciding local controversies at home; [5] the public policies of the
fora; and [6] the familiarity of the trial judge with the applicable state law in
diversity cases.

*Id.* at 498-99 (quoting same) (alteration in original).

### DISCUSSION[5]

"Venue is proper in judicial districts where: (1) 'any defendant resides, if all defendants
are residents of the State in which the district is located'; (2) 'a substantial part of the events or
omissions giving rise to the claim occurred'; or (3) 'if there is no district in which an action may
otherwise be brought as provided in this section, any judicial district in which any defendant is
subject to the court's personal jurisdiction with respect to such action.'" *Id.* at 499 (quoting 28
U.S.C. § 1391(b)).

Here, not all of the defendants are residents of the same state. For example, James J. Walsh
is a resident of the Commonwealth of Pennsylvania in Montgomery Country. At the same time,
one of the named defendants, Samantha Curry, is not a resident of the Commonwealth of
Pennsylvania. Ms. Curry provided a sworn declaration stating that she does not now, nor has she
ever, resided in Pennsylvania. Ms. Curry instead declares that she resides in and has resided in in
the State of Maryland. Thus, the first circumstance in which venue is proper is not applicable to
this case.

Plaintiffs allege that venue is appropriate in the Eastern District of Pennsylvania because
"the conduct alleged had occurred in" Montgomery County, Pennsylvania. Taking the allegations
as true, one could surmise that at least some substantial part of the events giving rise to the
plaintiffs' claims arose in the Eastern District of Pennsylvania where three of the defendants are

---

[5]     Because the Court finds that the Middle District of Pennsylvania is more familiar with the parties
and their claims, that court can determine the merits of the various motions to dismiss, and this Court instead
focuses on the relief sought to transfer the case.

residents of Montgomery County and allegedly acted against the plaintiffs there. At the same time, plaintiffs focus much of the complaint describing the losses they suffered at their residence, with the aftermath of the insurance coverage issues serving as the basis of the complaint. The plaintiffs' insured residence at issue here, as demonstrated in their insurance policy attached to the complaint, is in York, Pennsylvania. Thus, venue is appropriate in the Middle District of Pennsylvania and arguably in the Eastern District of Pennsylvania.

### I.   Private Interest Factors

The Court of Appeals for the Third Circuit has held that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" and that such choice "should not be lightly disturbed." *Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, No. 21-1739, 2022 WL 1046258, at *2 (D. Del. Apr. 7, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). But "plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum" or "when the plaintiff's choice of forum is not the plaintiff's residence." *Sisti v. Norfolk S. R.R. Corp.*, No. 23-3052, 2023 WL 7110701, at *2 (E.D. Pa. Oct. 26, 2023) (quoting *Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988)).

Here, the plaintiffs filed their complaint in the Eastern District of Pennsylvania, which is ostensibly their choice of forum. At the same time, the plaintiffs filed a complaint in the Middle District of Pennsylvania *prior* to this case being filed regarding the same events related to the plaintiffs' property loss. *Compare* Middle District Action, Compl. ¶ 21, No. 23-812 (M.D. Pa. May 17, 2023) ("Plaintiff Sustained a Loss in December 2022 and Defendants had failed to properly investigate and have violated the duty to defend."), *with* Compl. ¶¶ 66-68 ("21. Plaintiff Sustained a Loss in December 2022 and Defendants had failed to properly investigate and have violated the duty to defend."). It is also curious to note that the complaint in the action before this Court

includes identical language from the Middle District case and also includes the exact same paragraph number in which the language appears in the complaint in the Middle District. This implies that the plaintiffs' first choice of forum was actually the Middle District of Pennsylvania. In any event, as stated above, the plaintiffs reside in York, Pennsylvania, which is in the Middle District. At best, the first factor is neutral.

The second private factor, Defendants' forum preference, favors transfer because all defendants have included a motion to transfer as alternative relief in their motions to dismiss.

The next factor—whether the claim arose elsewhere—also weighs in favor of transfer. Although the plaintiffs allege that the conduct at issue arose in the Eastern District, this argument is "unconvincing" because the claims at issue predominantly "deal[] with the scope of the insurance policies." *State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, No. 17-3905, 2018 WL 3995956, at *4 (E.D. Pa. Aug. 21, 2018). As discussed above, most of the relevant actions occurred in York, Pennsylvania, where the plaintiffs' residence is located. The insurance policy covering their residence was evidently sent to York, PA. The billing statements for the policy where also sent to York, PA. Thus, this factor also weighs in favor of transfer.

The fourth factor—convenience of parties—weighs slightly in favor of transfer. "This factor evaluates the parties' 'relative physical and financial condition[s]'" that includes analyzing "who can 'afford more easily the inconvenience associated with travel' to the transferee forum." *Stewart*, 639 F. Supp. 3d at 500 (first quoting *Jumara*, 55 F.3d at 879, then quoting *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019)). The plaintiffs both reside in the Middle District of Pennsylvania. Of the defendants, two reside in the Eastern District of Pennsylvania, and the others are spread out across Maryland, Wisconsin, Texas, and Massachusetts. Of all the defendants, however, most are corporations, lawyers, or law firms that

would likely have more resources than the two plaintiffs proceeding *pro se*. Thus, this factor slightly weighs in favor of transfer to the Middle District of Pennsylvania.

The Court next evaluates the convenience of witnesses in deciding whether to transfer. The defendants argue that this factor also favors transfer of the case because many of the contractors employed or consulted to mitigate the property damage to the plaintiffs' residence in York are in the same area. Because the plaintiffs have not contested this point, because the Court does not see any reason for this to be untrue, and because the plaintiffs will likely be witnesses and are also located in York, this factor weighs in favor of transfer.

The final private interest factors, the location of books and records, are neutral. Although defendants argue that the documentary evidence is located in the Middle District, this factor is neutral because such evidence can likely be easily reproduced. *See Statewide*, 639 F. Supp. 3d at 500 ("[T]his factor would be neutral [because] files can be easily reproduced and provided in electronic format.").

## II.    Public Interest Factors

### A.    <u>Related Case in the Middle District</u>

"Consideration of public factors under *Jumara* requires the [C]ourt to evaluate each forum and determine where the litigation can proceed in the most efficient and inexpensive fashion." *Schlenker v. Immucor, Inc.*, No. 09-4297, 2009 WL 5033972, at *4 (E.D. Pa. Dec. 22, 2009) (quoting *In re Amkor Tech. Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)). Because there is already a pending action with almost identical claims and identical parties that was filed *prior* to this action, this factor heavily favors transfer to the Middle District of Pennsylvania.

Most importantly here, "[t]he presence of a related case in the transferee forum is a strong factor favoring transfer." *Schlenker*, 2009 WL 5033972 at *5. "In fact, courts in this District have

concluded that this factor alone is sufficient to warrant a transfer." *Id.* (quoting *Schiller-Pfeiffer, Inc. v. Cnty. Home Prods., Inc.*, No. 04-1444, 2004 WL 2755585, at *13 (E.D. Pa. Dec. 1, 2004)). Even the Supreme Court has held that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960).

Here, there is some argument that these are not *precisely* the same case. For example, in the instant case, the plaintiffs included Wardlaw Claims and Samantha Curry as defendants when they were not included in their complaint in the Middle District. All of the other defendants, five in total, are identical.

However, there is a strong suggestion that the plaintiffs simply copy and pasted their complaint from the Middle District of Pennsylvania into their complaint in this Court where certain allegations in the operative complaint here include identical language to that in the Middle District while also including *the exact same paragraph* number where that language appears in the complaint there. *Compare, e.g.*, Compl. ¶ 10 ("8. Jurisdiction is also proper for all defendants as a federal question. . ."), *with* Middle District Action, Compl. ¶ 8 ("Jurisdiction is also proper for all defendants as federal question. . . .").

Even those overseeing the plaintiffs' case in the Middle District of Pennsylvania have opined on its striking similarity with the case here. In a July 2023 memorandum opinion in that case, Magistrate Judge Martin C. Carlson stated that the plaintiffs had "filed a *virtually identical* lawsuit against these defendants in the United States District Court for the Eastern District of Pennsylvania." July 13 Op., Middle District Action at 3, Doc. No. 44 (citing this case). Magistrate

Judge Carlson also described the plaintiffs as facing "serious allegations" of "indulging in improper forum shopping" and "judge shopping." *Id.* at 7.

This appearance could not be any clearer to this Court. The plaintiffs, unsatisfied with the results they have faced thus far in the Middle District of Pennsylvania, now seek to bring their claims, with whatever potential seriousness they may have, to this Court so that they may fare better. The plaintiffs, who have already been reprimanded for their lack of civility both in communications with the defendants and in their representations before this Court, Jan. 23 Op., Doc. No. 23, are again seeking to take advantage of the judicial system. They fool no one with the transparent charade under which they act. Accordingly, their case has no place in this Court.

### B.  Other *Jumara* Factors

For the plaintiffs' federal claims, such as those under the Fair Housing Act, the first, fifth, and sixth public interest factors—enforceability of the judgment, public policies of the fora, and the familiarity of the judge with applicable state law—are neutral "because the causes of action at issue arise under federal law." *Stewart*, 639 F. Supp. 3d at 500 (quoting *Scanlan*, 366 F. Supp. 3d at 679).

Turning to the first factor for the state law claims, the enforceability of the judgment, the Court finds that this factor is neutral. Defendants argue that this factor favors transfer because it is doubtful whether this Court could exercise personal jurisdiction over Ms. Curry; however, it is equally doubtful whether the Middle District could exercise such personal jurisdiction where Ms. Curry is a resident of Maryland. Because neither party has otherwise briefed the issue and because it appears that a decision on the whole in either the Middle District or Eastern District would be enforceable, this factor is neutral.

The practical considerations, as described above, and the Middle District's desire to have this local controversy decided at home also weigh in favor of transfer. No party discusses the

9

public policies of this case and neither argues that the familiarity of the trial judge with the applicable state law favor its own position, so both of these factors are neutral. Court congestion slightly disfavors transfer where there are 368 pending cases per judge in the Eastern District of Pennsylvania and 613 pending cases per judge in the Middle District of Pennsylvania.[6] *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (September 30, 2023)*, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1. At the same time, there are 8,090 cases pending in the Eastern District and only 3,675 pending in the Middle District. *Id.* At best, this factor slightly disfavors transfer.

CONCLUSION

In sum, a majority of the *Jumara* factors either favor transfer to the Middle District of Pennsylvania or are neutral. Most importantly, however, is the fact that the plaintiffs here, having been aggrieved by the decisions thus far in the Middle District, instead sought to bring their suit to this Court.

However, the plaintiffs' duplicitous actions before this Court end today. An appropriate order follows.

BY THE COURT:


**s/ Gene E.K. Pratter**
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[6]     Of course, there are some potential issues with this statistic. For example, it signifies nothing about the activity of each case, the relative burden that each case presents, or the age of each case.